# In the United States Court of Federal Claims

No. 07-861C
Filed: November 30, 2009
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
|  | \* | Contract Disputes Act, |
|  | \* | 41 U.S.C. § 605(a); |
| WYOMING SAWMILLS, INC., | \* | Exhaustion of Administrative Remedies; |
|  | \* | Motion For Summary Judgment, |
| Plaintiff, | \* | RCFC 56(c); |
|  | \* | National Forest Management Act of 1976, |
| v. | \* | 16 U.S.C. § 472a; |
|  | \* | Pub. L. No. 110-234; |
| THE UNITED STATES, | \* | Ripeness; |
|  | \* | Tucker Act, 28 U.S.C. § 1491(a)(1), (a)(2); |
| Defendant. | \* | 36 C.F.R. § 223.31; |
|  | \* | 36 C.F.R. § 223.52(a)(1), (b)(2), (b)(3), (c); |
|  | \* | 61 FED. REG. 54589, 54590 (Oct. 21, 2996). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Scott William Horngren**, Haglund Kelley Horngren Jones & Wilder, LLP, Portland, Oregon, Counsel for Plaintiff.

**Loren Misha Preheim**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN**, *Judge*.

## I.    THE NATIONAL FOREST MANAGEMENT ACT OF 1976 AND RELEVANT REGULATIONS REGARDING CONTRACTS TO HARVEST TIMBER FROM FEDERAL FOREST RESOURCES.

The National Forest Management Act of 1976, 16 U.S.C. § 472a ("NFMA"), sets forth the terms and conditions under which the Forest Service may contract to harvest timber from federal forest resources.

Section 472a(c) of the NFMA provides:

The length and other terms of the contract shall be designed to promote orderly harvesting consistent with the principles set out in section 6 of the Forest and Rangeland Renewable Resources Planning Act of 1974, as amended [16 U.S.C. §

1604].  Unless there is a finding by the Secretary of Agriculture that better utilization of the various forest resources (consistent with the provisions of the Multiple-Use Sustained-Yield Act of 1960 [16 U.S.C. §§ 528-531]) will result, *sales contracts shall be for a period not to exceed ten years: Provided, That such period may be adjusted at the discretion of the Secretary to provide additional time due to time delays caused* by an act of an agent of the United States or *by other circumstances beyond the control of the purchaser. . . . The Secretary shall not extend any contract period with an original term of two years or more unless he finds (A) that the purchaser has diligently performed in accordance with an approved plan of operation or (B) that the substantial overriding public interest justifies the extension.*

16 U.S.C. § 472a(c) (emphasis added).

The Forest Service, however, is authorized to grant a Contract Term Adjustment ("CTA") or a Market-Related Contract Term Adjustment ("MRCTA") under certain circumstances.  Pl. Ex. A at 30, 122.  A CTA may be issued for such reasons as the purchaser experiencing delay in starting scheduled operations due to causes beyond the purchaser's control, or to accelerate the removal of distressed timber.  *Id.* at 30.  When a CTA is issued, the purchaser is afforded more time to make the periodic payment and the contract termination date is extended.  *Id.*

Likewise, the Forest Service may grant a MRCTA, when the Chief of the Forest Service "has determined that adverse wood products market conditions have resulted in a drastic reduction in wood product prices applicable to the sale[,]" and the purchaser makes a written request for additional time to perform under a contract to harvest timber from federal forest resources.  36 C.F.R. § 223.52(a)(1).  The Chief "shall determine that a drastic reduction in wood prices has occurred when, for any 2 or more consecutive qualifying quarters, the applicable adjusted price index is less than 85 percent of the average of such index for the 4 highest of the 8 calendar quarters immediately prior to the qualifying quarter."  36 C.F.R. § 223.52(b)(2).  The circumstances under which a MRCTA may be granted are:

When the Chief of the Forest Service determines, pursuant to this section, that a *drastic reduction in wood product prices has occurred*, the Forest Service is to notify affected timber sale purchasers.  For any contract which has been awarded and has not been terminated, *the Forest Service, upon a purchaser's written request, will add 1 year to the contract's terms*, except as provided in paragraphs (c)(1) through (4) of this section. . . . *In no event shall a revised contract term exceed 10 years as a result of market-related contract term addition*.

36 C.F.R. § 223.52(c) (emphasis added).

## II.     RELEVANT FACTUAL BACKGROUND.[1]

Wyoming Sawmills, Inc. ("Plaintiff") operates a lumber mill in Sheridan, Wyoming, primarily producing studs used in new home construction. Compl. ¶ 4. On December 10, 1993, Plaintiff entered into a contract with the Forest Service, *i.e.*, Wabash Timber Sale Contract No. 003876 ("the Contract"), that allowed Plaintiff to harvest certain timber in the Black Hills National Forest in South Dakota. Pl. Ex. A at 1-2. The Contract had a termination date of September 30, 1999, and a periodic payment schedule that required Plaintiff to pay the Forest Service one-third of the value of the Contract by September 4, 1997, with a second and final payment of two-thirds of the value of the Contract due on September 4, 1998. *Id.* at 49. Although Plaintiff harvested some timber and made the first payment, to date, Plaintiff has not harvested a sufficient amount of timber to make the second and final payment. Compl. ¶¶ 21-24.

The Contract, however, has been modified on six occasions.

1.      On January 23, 1996, the Contract termination date of September 30, 1999 was extended to August 31, 2000, by a CTA, authorizing Plaintiff to harvest timber in the Bighorn National Forest, instead of the Black Hills National Forest, because of an urgent need of the Forest Service.[2] 9/4/08 JSR at 3.

2.      On September 16, 1996, the Contract termination date of August 31, 2000 was extended to August 31, 2001, by special authorization of the Chief of the Forest Service. Pl. Ex. C at 1-2. The Chief of the Forest Service authorized this one-year extension and deferral of the periodic payment on "certain timber sale contracts that were awarded prior to January 1, 1995," because the Contract had not been previously extended by a MRCTA. Gov't Ex. 4.

3.      On December 23, 1996, the Contract termination date of August 31, 2001 was extended to February 28, 2003, by a CTA again to authorize Plaintiff to harvest timber in the Bighorn National Forest, because of an urgent need of the Forest Service. 9/4/08 JSR at 3.

---

[1] The facts recited herein were derived from: the December 6, 2007 Complaint ("Compl."); Plaintiff's Exhibits In Support Of Proposed Findings Of Uncontroverted Fact ("Pl. Ex. A-I"); the Government's Exhibits In Support Of Proposed Findings Of Uncontroverted Fact ("Gov't Ex. 1-21"); and the Parties' September 4, 2008 Joint Status Report ("9/4/08 JSR").

[2] Termination and periodic payment dates are changed in tandem when a contract is adjusted. Pl. Ex. A at 49.

4.      On June 25, 1998, the Contract's MRCTA provision was modified as follows:

> The term of this contract may be adjusted when a drastic reduction in wood product prices has occurred in accordance with 36 CFR 223.52. The Producer Price Index used to determine when a drastic reduction in price has occurred is the Western Softwood Lumber Producer Price Index, Number 2421#4.   Purchaser will be notified whenever the Chief determines that a drastic reduction in wood product prices has occurred.  If the drastic reduction criteria specified in 36 CFR 223.52 are met for two consecutive calendar quarters, after contract award date, Forest Service will add 1 year to the contract term upon Purchaser's written request.  For each additional consecutive quarter such a drastic reduction occurs, Forest Service will, upon written request, add an additional 3 months to the term during Normal Operating Season.  Purchaser's written request for a market-related contract term addition must be received by the Forest Service before the expiration of this contract.

> The total amount of contract term addition is limited to the lesser of twice the length of the original contract or 3 years.  *The revised contract term may not exceed 10 years as a result of market-related contract term addition*.  Additional contract time may not be granted for those portions of the contract which have a required completion date or for those portions of the contract where the Contracting Officer determines that the timber is in need of urgent removal, or that timber deterioration or resource damage will result from delay.

> When a contract is lengthened as a result of market-related contract term additions any subsequent period payment date shall be delayed one month for each month added to the contract's term.

Pl. Ex. C at 3-4 (emphasis added).[3]

5.      On January 6, 1999, the Contract termination date of February 28, 2003 was extended to December 10, 2003 by a MRCTA, "due to a drastic reduction in wood product prices in accordance with 36 C.F.R. [§] 223.52."  Gov't Ex. 5.

6.      On October 26, 2001, the Contract termination date of December 10, 2003 was extended to December 20, 2008, by a third CTA, to provide Plaintiff time to harvest

---

[3] The record, however, does not indicate what consideration, if any, was proffered for this contract modification.

timber in urgent need of removal in a different area of the Black Hills National Forest. Compl. ¶ 19.

On March 5, 2007, Plaintiff requested another two-year MRCTA extension, from December 20, 2008, because of the Forest Service's "finding of substantial overriding public interest." Compl. ¶ 22. Plaintiff concluded that the Contract was eligible for a MRCTA for each quarter in 2007, as a result of the "prolonged depression in the housing market." *Id.* At the time of this request for an extension, the Contract had been in operation for almost 15 years, beginning on December 10, 1993, with a termination date of December 20, 2008. *Id.* at ¶ 17.

On March 12, 2007, however, the Forest Service denied Plaintiff's MRCTA extension, because the Contract provided that: "[t]he revised contract term may not exceed 10 years as a result of [a] market-related contract term addition." Pl. Ex. F at 4; *see also* Pl. Ex. C at 3-4. The Forest Service found that "[t]he [Contract] does not qualify for [another] MRCTA under C8.212-Market-Related Contract Term Addition . . . as the contract term exceeds 10 years." Pl. Ex. F at 4.

On March 30, 2007, Plaintiff requested reconsideration of this decision. *Id.* at 1. On April 2, 2007, Plaintiff's request was denied, because the Forest Service determined that the Contract no longer qualified for a MRCTA, "as the contract term exceeds 10 years." Pl. Ex. G.

On August 9, 2007, Plaintiff wrote a letter to the Regional Forester (Region 2), requesting a "finding of substantial overriding public interest[,]" because the Contract provided that the term "may be adjusted when a drastic reduction in wood product prices has occurred in accordance with 36 CFR 223.52."[4] Gov't Ex. 17. This 2007 adjustment would extend the termination date of the Contract from December 20, 2008 to March 20, 2011 and defer Plaintiff's obligation to make the payment of $1,066,200 due on November 14, 2007 until November 14, 2010. *Id.*

On September 11, 2007, the Regional Forester (Region 2) denied Plaintiff's August 9, 2007 request for another adjustment, because: "by the time the sale terminates in December 2008, the contract will have run for approximately 15 years, which is clearly beyond any regulatory allowances foreseen in the Code of Federal Regulations that regulate timber sale contracts." Gov't Ex. 18.

## III.   PROCEDURAL HISTORY.

On December 6, 2007, Plaintiff filed a Complaint in the United States Court of Federal Claims, alleging that the Forest Service's refusal to grant another MRCTA extension was a "breach

---

[4] Section 223.52(b)(3) of Chapter 36 of the Code of Federal Regulations provides: "A determination, made pursuant to paragraph (b)(2) of this section, that a drastic reduction in wood product prices has occurred, shall constitute a finding that the substantial overriding public interest justifies the contract term addition." 36 C.F.R. § 223.52(b)(3).

of contract provision C8.212# and contrary to . . . 36 C.F.R. 22[3].52 . . . [that is] incorporated into provision C8.212#." Compl. ¶¶ 1, 29.  On April 4, 2008, the Government filed an Answer.

On June 26, 2008, the court granted the Government's June 25, 2008 Unopposed Motion To Stay the case ("Gov't 6/25/08 Mot. To Stay"), because on June 19, 2008, the Forest Service issued a "substantial overriding public interest" finding relevant to Plaintiff's March 5, 2007 and August 9, 2007 MRCTA requests, but needed additional time to determine whether the Contract qualified for an extension under Section 472a(c) of the NFMA.  Gov't 6/25/08 Mot. To Stay at 1.  On August 13, 2008, the court granted the Government's August 11, 2008 Unopposed Motion To Stay.

On September 4, 2008, the parties submitted a Joint Preliminary Status Report, agreeing to the court's jurisdiction, the relevant factual and legal issues in dispute, the likelihood of settlement, and a proposed discovery plan.

On November 25, 2008, Plaintiff requested that the Forest Service modify the Contract, pursuant to catastrophe provisions B8.33 and B2.133, because of "a significant increase in the insect infestation within the sale area during the last several years." Gov't Ex. 19.  On December 19, 2008, the Forest Service denied Plaintiff's request, because the contracting officer determined that the insect damage in the sale area did not exceed one million board feet of volume within a 12-month period, as Contract provision B2.133 requires.  Gov't Ex. 20.

On December 9, 2008, Plaintiff filed a Motion To Amend [the December 6, 2007] Complaint and a Motion For Preliminary Injunction.  On December 23, 2008, the Government filed a Response. On January 7, 2009, Plaintiff filed a Reply.  On January 7, 2009 and January 15, 2009, the court convened telephone conferences to discuss the pending motions.  On February 5, 2009, the parties entered into a Stipulation and Plaintiff withdrew the December 9, 2008 Motions ("2/5/09 Stip.").[5]

On December 20, 2008, the Government terminated the Contract, because Plaintiff did not make the periodic payment of $1,066,200 due on November 14, 2007.  Compl. ¶ 19.  Plaintiff responded, "[i]f the Forest Service provided the MRCTA to which [Plaintiff] is entitled to, the [Contract] termination date would have been adjusted from 2008 to 2011 and the periodic payment deadline would be adjusted from 2007 to 2010."  *Id.* at ¶ 24.

On February 19, 2009, the court convened a hearing in Denver, Colorado.

---

[5] In surveying the sale area, in response to Plaintiff's November 25, 2008 request, the Forest Service determined that certain units within the Wabash Timber Sale area contained timber in urgent need of removal.  Gov't Ex. 2.  Although Plaintiff initially filed a preliminary injunction to block the removal, subsequently, Plaintiff agreed to allow the Forest Service to proceed with the removal and sale of the relevant Wabash Timber Sale units, without prejudicing the parties' litigation positions in this case.  2/5/09 Stip. at ¶¶ 1-5.

On April 24, 2009, Plaintiff filed a Motion For Summary Judgment And Memorandum In Support ("Pl. Mot. S.J."), together with Proposed Findings Of Uncontroverted Fact.  On June 2, 2009, the Government filed a Cross Motion For Summary Judgment And Opposition To Plaintiff's Motion For Summary Judgment ("Gov't Mot. S.J. & Opp."), together with a Response To Plaintiff's Proposed Findings Of Uncontroverted Fact, and Proposed Findings Of Uncontroverted Fact.  On June 30, 2009, Plaintiff filed a Response To The Government's Motion For Summary Judgment And Reply In Support Of Plaintiff's Motion For Summary Judgment ("Pl. Resp. & Reply"), together with a Response To Defendant's Proposed Findings Of Uncontroverted Fact.  On August 14, 2009, the Government filed a Reply ("Gov't Reply").

## IV.    DISCUSSION.

### A.    Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  28 U.S.C. § 1491(a)(1).  This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  *Id*.  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists."  *United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").  The burden of establishing jurisdiction falls upon the plaintiff. *FW/PBS, Inc*. v. *City of Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction).

The Tucker Act authorizes the United States Court of Federal Claims "to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of 1978, including a dispute concerning termination of a contract." 28 U.S.C. § 1491(a)(2).  The December 6, 2007 Complaint challenges the Forest Service decision to terminate the Wabash Timber Sale Contract awarded to Wyoming Sawmills on December 10, 1993, and therefore has identified a contractual relationship that provides a substantive right to money damages so that the court has jurisdiction to adjudicate the claims alleged therein.  *Fisher*, 402 F.3d at 1172.  In addition, Plaintiff satisfied the requirements of the Contract Disputes Act by submitting its claim to the contracting officer in letters dated March 5, 2007 and March 30, 2007.  41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.").  Further, the contracting officer denied Plaintiff's March 5, 2007 claim in writing on March 12, 2007, and denied Plaintiff's March 30, 2007 claim in writing

7

on April 2, 2007.  *Id.* ("The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor.  The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter.").

**B.      Standard For Decision On A Motion For Summary Judgment.**

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law.  *Moden* v. *United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c).  Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment.  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.").  The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Id.*  Therefore, to avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable factfinder to return a verdict for that party.  *Id.* at 248-50 (citation omitted).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing' – that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case"); *see also Riley & Ephriam Constr. Co., Inc.* v. *United States*, 408 F.3d 1369, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.").  Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial.  *Novartis Corp.* v. *Ben Venue Labs*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial").

The trial court is required to resolve all doubt over factual issues in favor of the nonmoving party.  *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  All reasonable inferences and presumptions must be resolved in favor of the nonmoving party.  *Anderson*, 477 U.S. at 255; *see also Moden*, 404 F.3d at 1342 ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

C.      **The Parties' Cross Motions For Summary Judgment.**

1.      **Plaintiff's April 24, 2009 Motion For Summary Judgment.**

On April 24, 2009, Plaintiff moved for summary judgment, because the Forest Service's decision that the Wabash Timber Sale does not qualify for a MRCTA is a breach of contract provision C8.212# and contrary to 36 C.F.R. § 223.52.  Pl. Mot. S.J. at 13.

Plaintiff first argues that the conditions necessary to trigger contract provision C8.212# were met, in part, because in two consecutive qualifying quarters in 2007 the Forest Service found there was a "drastic reduction" in wood prices.  36 C.F.R. § 223.52(b)(2) ("The Chief of the Forest Service shall determine that a drastic reduction in wood prices has occurred when, for any 2 or more consecutive qualifying quarters, the adjusted price index is less than 85 percent of the average of such index for the 4 highest of the 8 calendar quarters immediately prior to the qualifying quarter."). Accordingly, the Chief of the Forest Service should have determined that a "substantial overriding public interest" justified a "contract term addition," based on at least two consecutive quarters of declining wood prices, under 36 C.F.R. § 223.52(b)(2).[6]  Pl. Mot. S.J. at 9.

Second, the "undisputed fact" that the Contract's termination date exceeded ten years when a MRCTA was requested does not disqualify the Contract from being eligible for another MRCTA. *Id.* at 8-9.  The NFMA does not set an absolute limit on contract length, since the Secretary of Agriculture can determine otherwise.  16 U.S.C. § 472a(c) ("Unless there is a finding by the Secretary of Agriculture that better utilization of the various forest resources . . . will result, sale contracts shall be for a period not to exceed ten years.").  Specifically, as the Federal Register Notice regarding the MRCTA regulation at issue explains: "if there is a drastic decline in wood product prices sufficient to trigger the market-related contract term addition, there would be a corollary substantial overriding public interest to extend the term of existing timber sale contracts, as required by the National Forest Management Act of 1976."  61 FED. REG. 54589, 54590 (Oct. 21, 1996).

Third, ten years is not an absolute limit on contract length.  36 C.F.R. § 223.52(c)(4) ("In no event shall a revised contract term exceed 10 years *as a result of* market-related contract term additions.") (emphasis added).  This regulation only prohibits adjustment of a contract termination date beyond ten years "as a result of" a market-related contract term addition.  *Id.*  Here, Plaintiff contends that if the contract termination date already extends beyond ten years, a plain reading of this regulation does not preclude a market-related contract term extension.  Pl. Mot. S.J. at 10-11. In fact, in this case, the Contract first was extended beyond ten years specifically to accommodate the Forest Service's "desire to have [Plaintiff] devote its energies to harvest of the Blackhawk

_____

[6] Section 223.52(b)(3) of Chapter 36 of the Code of Federal Regulations provides: "A determination, made pursuant to paragraph (b)(2) of this section, that a drastic reduction in wood product prices has occurred, shall constitute a finding that the substantial overriding public interest justifies the contract term addition."  36 C.F.R. § 223.52(b)(3).

salvage sale which was in urgent need of removal." *Id.* at 11. Therefore, the fact that the Contract exceeded ten years was a result of the Blackhawk salvage sale, not a MRCTA extension. *Id.*

The United States Court of Appeals for the Federal Circuit consistently has applied the plain dictionary meaning of the phrase "as the result of." *Murakami* v. *United States*, 398 F.3d 1342, 1351-52 (Fed. Cir. 2005) ("According to dictionary definitions, the verb 'result' commonly means 'to proceed, spring, or arise as a consequence, effect or conclusion.'"); *see also Black Hills Aviation, Inc.* v. *United States*, 34 F.3d 968, 975 (10th Cir. 1994) ("'[A]s a result of' . . . is logically interpreted to mean 'caused by.'"); *Am. Ins. Co. of City of Newark* v. *Keane*, 233 F.2d 354, 360 (D.C. Cir. 1956) ("[W]e see no reason why the words 'resulting from' should not be held flatly to mean what the parties would reasonably expect and understand them to mean. The verb 'result' is defined: 'To proceed, spring, or arise as a consequence, effect, or conclusion.'"). The MRCTA regulation does not state, "in no event may the contract exceed ten years," which is the interpretation the contracting officer has given this regulation. Pl. Mot. S.J. at 12. Since the Contract was extended beyond ten years to accommodate the Forest Service, not, because of a MRCTA, Plaintiff's request for a MRCTA, when the contract already exceeded ten years, is consistent with the "plain and unambiguously expressed terms of the contract or regulation." *Id.*

Finally, contract provision C8.212# is "irrelevant and inapplicable," once the Contract reaches ten years under the Forest Service's interpretation of the regulation. *Id.* This is evidenced by the fact that the Forest Service, on at least two occasions, decided to retain the MRCTA provision in the Contract after the ten-year length was reached. *Id.*

For these reasons, Plaintiff argues entitlement to summary judgment, because the Forest Service's refusal to grant Plaintiff's request for MRCTA is "a breach of contract provision C8.212# and the governing regulation 36 C.F.R. § 223.52." *Id.* at 13.

### 2. The Government's June 2, 2009 Cross Motion For Summary Judgment And Opposition To Plaintiff's April 24, 2009 Motion For Summary Judgment.

The Government insists entitlement to summary judgment, because the Contract did not qualify for a MRCTA, as it was more than ten years old when Plaintiff requested an extension. Gov't Mot. S.J. & Opp. at 1, 9. As a threshold matter, contract provision C8.212# provides that, "[t]he revised contract term may not exceed 10 years as a result of market-related contract term addition." Gov't Ex. 1. The only reasonable interpretation of this language is that a contract that has exceeded the ten-year statutory term is not eligible for a MRCTA. Gov't Mot. S.J. & Opp. at 10. Accordingly, the Government properly denied Plaintiff's March 5, 2007 request for MRCTA, because Plaintiff previously received a MRCTA extension in 1999, but was granted only nine months due to the ten-year limitation. *Id.* That extension brought the Contract to exactly ten years and Plaintiff never contested that decision. *Id.*

Second, Plaintiff's argument that the ten-year limitation does not apply to contracts that have been extended beyond that time is inconsistent with the plain meaning of contract provision C8.212#, prohibiting contracts with terms of ten years or more from receiving a MRCTA. *Id.* The language of C8.212# is not ambiguous, so the provision's plain language is controlling, and the Government did not breach the Contract by denying Plaintiff's 2007 MRCTA request. *Id.* In addition, Plaintiff's reading of the Contract "fails to recognize that there may be many causes of the [Contract] exceeding 10 years." *Id.* The fact that one extension may result in the Contract exceeding ten years does not mean that another extension, like MRCTA, cannot also cause the Contract to exceed ten years. *Id.* Granting a 15-year old contract an additional two-year MRCTA extension, as Plaintiff requests, would result in the Contract exceeding ten years. *Id.* at 11.

Third, the Forest Service may grant a MRCTA extension when a drastic reduction in wood prices occurs and there is a finding of substantial overriding public interest. 36 C.F.R. § 223.52(b)(3). Contracts with a term of ten years or more, however, are not eligible for a MRCTA. 36 C.F.R. § 223.52(c)(5) ("In no event shall a revised contract term exceed 10 years as a result of market-related contract term additions."). In addition, there is a general prohibition against extending contracts beyond ten years. 36 C.F.R. § 223.31 ("Sale contracts shall not exceed 10 years in duration, unless there is a finding by the Chief, Forest Service, that better utilization of the various forest resources . . . will result."). These regulations are consistent with Section 472a(c) of the NFMA that "limits the Forest Service's authority to extend timber sale contracts beyond 10 years." Gov't Mot. S.J. & Opp. at 11-12. The NFMA requires two findings before a contract can be extended beyond ten years: first, the Secretary must find that the purchaser has performed diligently or that the substantial overriding public interest justifies the extension; and second, the Secretary must find that extending the contract beyond ten years will result in better utilization of forest resources. *Id.* at 12 (citing 16 U.S.C. § 472a(c)).

Fourth, regardless of the ten-year limitation, Plaintiff is prohibited from receiving an extension, because the Secretary of Agriculture has never found that granting Plaintiff a MRCTA extension will result in better utilization of the various forest resources. *Id.* at 12-13. Although the Secretary could, at its discretion, amend the Contract to extend the termination date beyond ten years if the Secretary found that better utilization of forest resources would result and there was substantial overriding public interest, the Contract does not require the Secretary to do so. *Id.* at 13. The Contract requires only the Forest Service to issue a MRCTA if there was a finding of substantial overriding public interest and the contract term would not exceed ten years, but that is inapplicable here, because the Contract is more than ten years old. *Id.*

Fifth, Plaintiff overlooks the fact that the Contract would have expired many years ago if the Forest Service had not granted Plaintiff other extensions. *Id.* If Plaintiff's argument is adopted, it may force the Forest Service to "refuse[] to grant timber purchasers other, non-MRCTA, extensions," because an extension resulting in a contract length of ten years could be construed as a waiver of the MRCTA's ten-year limitation. *Id.*

11

Sixth, Plaintiff's argument that contract provision C8.212# should have been deleted when the term exceeded ten years lacks merit.  *Id.* at 14.  The Government had no reason to delete this provision.  *Id.*  Moreover, the Government does not "constantly review contracts to determine which provisions are still in effect at which times, nor should it be expected to."  *Id.*

Finally, contract provision C8.212# prohibits extensions when timber is in urgent need of removal, as well as when the contracting officer concludes that timber or resource damage will result from delayed contract performance.  *Id.*  In this case, the contracting officer determined that granting Plaintiff's request for a MRCTA would result in unacceptable timber deterioration and resource damage from continued insect activity and that certain timber was in urgent need of removal.  *Id.* at 14-15.  Therefore, even if the ten-year limitation did not apply, the Contract still was not eligible for a MRCTA extension.  *Id.* at 15.

### 3.    Plaintiff's June 30, 2009 Response And Reply.

Plaintiff responds that the plain language of the Contract, 36 C.F.R. § 223.52, and the NFMA do not support the Government's "narrow interpretation" that the Contract is not entitled to MRCTA. Pl. Resp. & Reply at 8.  The plain meaning of the Contract provides that, if the Contract is extended beyond ten years for a "legitimate reason" for the benefit of the Government, the purchaser would not be penalized, if market conditions deteriorated during that period.  *Id.*  The Government fails to recognize that the reference to ten years in the Contract is modified by "as a result of MRCTA," so that the two phrases read together "means the later events do not 'cause' the 10 year threshold to be exceeded a second time."  *Id.* at 9.  There is no suggestion that the contract term "as a result of" should be construed differently than its ordinary meaning.  *Id.*  The plain meaning of provision C8.212# is that the Contract cannot exceed ten years as a result of MRCTA, not that if the Contract exceeds ten years for other reasons, a MRCTA may not be granted.  *Id.*

In addition, the Government fails to acknowledge that the required finding of substantial overriding public interest for a MRCTA is "made automatically when there is a prolonged and drastic decline in wood products prices."  *Id.* at 10 (citing 36 C.F.R. § 223.52(b)(3)).  In 2007, when Plaintiff made a MRCTA request, the Forest Service determined that there was a drastic decline in wood product prices, because the index for wood product prices had fallen significantly for at least two consecutive quarters.  *Id.*  Therefore, all of the conditions required for issuance of a MRCTA had occurred.  *Id.*

In the alternative, to the extent that the MRCTA contract provision contains a latent ambiguity, it should be construed against the Government.  *Id.* at 14.  A latent ambiguity is a "hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable or customary care, and is not so 'patent and glaring as to impose an affirmative duty on plaintiff to seek clarification.'"  *Diggins Equip. Corp.* v. *United States*, 17 Cl. Ct. 358, 360 (1989) (quoting *Avedon Corp.* v. *United States*, 15 Cl. Ct. 771, 777 (1988)).  A latent ambiguity is evident when two conflicting interpretations appear reasonable.  *West Bay Builders, Inc.* v. *United States*, 85 Fed. Cl. 1, 16 (2008) ("A latent ambiguity arises only once the contract is applied . . . and

generally becomes evident when, considered in light of the objective circumstances, two conflicting interpretations appear reasonable.") (quotation and citation omitted). A contractor may show that its interpretation is reasonable by a number of ways, including by demonstrating that other contractors had the same interpretation, or by showing that the Government's interpretation is inherently unfair. Pl. Resp. & Reply at 15-16.

In this case, the Contract was extended beyond ten years by CTA extensions for the benefit of the Government, not because of a MRCTA extension. *Id.* at 16. For this reason, if the court accepts the Government's interpretation, the contract term regarding MRCTA extensions either renders the phrase "as a result of" meaningless or contains a latent ambiguity. *Id.* at 16-17. Plaintiff's interpretation is the only one that gives effect to the entire phrase: "[t]he revised contract term may not exceed ten years as a result of market-related contract term addition." *Id.* at 17. The Government could have drafted the phrase differently if it wanted to establish an absolute ten-year ceiling on contracts. *Id.* Since the CTA extension caused the Contract term to exceed ten years, the Government now cannot deny Plaintiff a MRCTA, because the requested extension also would "cause" the ten year term to be exceeded. *Id.* at 18.

Finally, insect activity in the sale area does not affect the interpretation of the Contract and is not a valid basis to deny Plaintiff's MRCTA request. *Id.* at 19. Plaintiff acknowledges that there has been, and will continue to be, insect activity in the sale area, but that does not justify the contracting officer denying the MRCTA in 2007, nor is it relevant to interpreting the Contract. *Id.* The Government did not invoke insect damage as a reason for denying Plaintiff's MRCTA request, because if it had, Plaintiff would not need to pay the balance of the purchase price for any units urgently removed from the Contract, as the risk of loss of such timber remains with the Government. *Id.* Moreover, the Government misreads the Contract in arguing that, if certain units of the timber sale were in urgent need of removal, then the sale is not eligible for a MRCTA. *Id.* at 20. Revised contract provision C8.212# provides that if certain units are in need of urgent removal in a portion of the sale, then a MRCTA would not apply to those units, but the remainder of the Contract remains eligible for a MRCTA. Pl. Ex. C at 3-4. When Plaintiff made the request for a MRCTA in 2007, no timber required urgent removal. Pl. Resp. & Reply at 21. It was not until late 2008 that the Government ascertained the extent of insect activity in the sale area. *Id.* Even then, the Government concluded that damage in the remainder of the sale area was minimal. *Id.* The Government's argument for not granting MRCTA due to insect activity rests upon the contention that there would be unacceptable timber deterioration and resource damage, however, this reason is not mentioned in the contracting officer's letters denying Plaintiff's MRCTA request. *Id.*

### 4.    The Government's August 14, 2009 Reply.

The Government replies that contract provision C8.212#, by its plain and ordinary meaning, prohibits Plaintiff from receiving an extension, if the Contract is more than ten years old. Gov't Reply at 1. This provision allows the Government to add additional time to a contract's term only when there is a drastic reduction in wood product prices, subject to certain limitations. *Id.* Three of those limitations prohibited Plaintiff from receiving an extension: (1) the Contract cannot extend

beyond ten years as a result of a MRCTA extension; (2) portions of the Contract concerned timber in urgent need of removal that are not eligible for a MRCTA extension; and (3) a MRCTA extension cannot be granted when the contracting officer concludes that timber is in urgent need of removal or resource damage will result from delayed contract performance. *Id.*

The only reasonable interpretation of contract provision C8.212# is that: "[t]he revised contract term may not exceed 10 years as a result of market-related contract term addition," so that a contract with a term of ten years is not eligible for a MRCTA extension. *Id.* at 2. Moreover, the Government's interpretation does not penalize Plaintiff for purchasing salvage timber sale contracts. *Id.* In fact, Plaintiff received seven years of extensions when making these purchases that enabled it to delay cutting the timber subject to the Contract for 15 years. *Id.* Further, none of the cases Plaintiff cites hold that "as a result of" means to cause only once. *Id.* at 2-4. The unreasonableness of Plaintiff's argument is illustrated by a contract that is nine years, 364 days old, and is extended by the Forest Service for a week. *Id.* at 5. Under Plaintiff's interpretation, the one week extension would extend the contract past ten years and, therefore, the ten-year limitation no longer applies. *Id.* at 5-6.

In addition, Forest Service regulations do not compel the Government to grant Plaintiff the requested two-year MRCTA extension. *Id.* at 6. Instead, the statute and regulations support the Government's interpretation. *Id.* The Government has never disputed that the requisite finding of substantial overriding public interest is made automatically when there is a prolonged and drastic decline in wood product prices. *Id.* The Government also agrees that there were drastic reductions in wood product prices during the relevant time period. *Id.* Plaintiff, however, ignores 36 C.F.R. § 223.52(c)(5), that provides that a revised contract term still cannot exceed ten years as a result of market-related contract term additions. *Id.* In addition, 36 C.F.R. § 223.31 requires that sale contracts cannot exceed ten years, unless the Secretary of Agriculture finds that better utilization of forest resources will result. *Id.* In this case, the Secretary of Agriculture never made that finding. *Id.* at 7.

As to Plaintiff's contention that the MRCTA provision contains a latent ambiguity, contract terms are not ambiguous simply because the parties disagree as to their meaning. *Id.* at 8.

Finally, contract provision C8.212# also "prohibits MRCTA extensions for portions of the contract that contain timber in urgent need of removal or when the contracting officer concludes that timber deterioration or resource damage will result from delayed contract performance." *Id.* at 9. In this case, the contracting officer determined that granting a MRCTA extension would result in unacceptable timber deterioration and resource damage from continued insect activity and that several units were in urgent need of removal. *Id.* The contracting officer did not cite this reason in the letter denying Plaintiff's MRCTA request, only because the Contract was not eligible for any extension. *Id.*

D.      **The Court's Resolution.**

The December 6, 2007 Complaint alleges that the Forest Service's refusal to grant Plaintiff a MRCTA extension is a breach of the Contract and violates 36 C.F.R. § 223.52.  Compl. ¶ 29.  The relevant contract provision provides, "[t]he revised contract term may not exceed 10 years as a result of [a] market-related contract term addition."  Pl. Ex. C at 4; *see also* Gov't Ex. 1.

The National Forest Management Act authorizes the Secretary of Agriculture to extend timber contracts beyond ten years:

> Unless there is a finding by the Secretary of Agriculture that better utilization of the various forest resources . . . will result, sales contracts shall be for a period not to exceed ten years: *Provided*, That such period may be adjusted at the discretion of the Secretary to provide additional time due to time delays caused by an act of an agent of the United States or by other circumstances beyond the control of the purchaser.

16 U.S.C. § 472a(c) (emphasis in original).

In addition, the Secretary may not extend any contract period with an original term of more than two years, "unless [the Secretary] finds (A) that the purchaser has diligently performed in accordance with an approved plan of operation or (B) that the substantial overriding public interest justifies the extension."  *Id.*

In this case, the Government does not contest that the Contract could be extended, if the Secretary of Agriculture determined a "better utilization of . . . forest resources will result and if there was a finding of substantial overriding public interest."  Gov't Mot. S.J. & Opp. at 13.  But, as the Government correctly observed, "the Secretary of Agriculture has never found that granting [Plaintiff] a MRCTA will result in better utilization of the various forest resources."  *Id.* at 12-13; *see also* Gov't Reply at 7.

The United States Supreme Court has held that the doctrine of exhaustion of administrative remedies precludes "judicial relief for a supposed or threatened injury *until the prescribed administrative remedy has been exhausted*."  *McKart* v. *United States*, 395 U.S. 185, 193 (1969) (quoting *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)) (emphasis added). General policies, such as protecting administrative agency authority and promoting judicial efficiency, underlie the exhaustion requirement.  *Id.*  More recently, in *McCarthy* v. *Madigan*, 503 U.S. 140 (1992), the United States Supreme Court explained that the exhaustion doctrine is "grounded in deference to Congress's delegation of authority to coordinate branches, *that agencies*, not the courts, ought to *have primary responsibility for the programs that Congress has charged*

them to administer." *Id.* at 145, *superceded by statute on other grounds*, 42 U.S.C. § 1997e(a)[7] (emphasis added). The Court emphasized that the exhaustion doctrine applies with special force when Congress authorized "the agency to apply its special expertise," as the doctrine "acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.*

In this case, Plaintiff has not petitioned the Secretary of Agriculture to obtain a MRCTA extension, although the National Forest Management Act authorizes the Secretary to extend a contract at his/her "discretion." 16 U.S.C. § 472a(c). Therefore, before the parties' dispute is ripe for adjudication, Plaintiff is required to petition the Secretary to determine whether at this time "better utilization of the various forest resources . . . will result," and whether "the substantial overriding public interest justifies the extension." *Id.*[8]

[7] Section 1997e(a) of Chapter 42 of the United States Code provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

[8] The futility exception to the exhaustion requirement does not relieve Plaintiff from the obligation of exhausting its administrative remedies. The futility exception has been applied in situations in which enforcing the exhaustion requirement would mean that parties "would be 'required to go through obviously useless motions in order to preserve their rights.'" *Bendure* v. *United States*, 213 Ct. Cl. 633, 554 F.3d 427, 431 (1977) (quoting *Walsh* v. *United States*, 151 Ct. Cl. 507, 511 (1960)). That exception, however, is a narrow one, and the mere fact that an adverse decision could result does not excuse a party from a statutory or regulatory requirement to exhaust available administrative remedies. *Commc'ns Workers of Am.* v. *Am. Tel. & Tel. Co.*, 40 F.3d 426, 432 (D.C. Cir. 1994) ("The futility exception is, however, quite restricted, and has been applied only when resort to administrative remedies is clearly useless.") (quotation and citation omitted).

V.       **CONCLUSION.**

        For the aforementioned reasons, the court has decided to defer ruling on Plaintiff's April 24, 2009 Motion For Summary Judgment and the Government's June 2, 2009 Cross Motion For Summary Judgment.  This case is stayed for six months to afford Plaintiff the opportunity to petition the Secretary of Agriculture and for the Secretary to decide whether, and for how long, to grant any extension of the Contract.  16 U.S.C. § 472a(c).

        **IT IS SO ORDERED.**

                                                            _s/ Susan G. Braden_____
                                                            **SUSAN G. BRADEN**
                                                            **Judge**